JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Fernando Gonzalez, Administrator of The Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos and Roxanne Martinez

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Fredrick E. Charles, Esquire   (610) 437-7064
441 Linden Street
Allentown, PA 18102

## DEFENDANTS
City of Philadelphia, et al
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
City of Philadelphia, Law Department (215) 683-5442
1515 Arch Street - 14th Floor
Philadelphia, PA l9l02

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                               *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
☒ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983
Brief description of cause:
Excessive force/Plaintiff Decedent killed by police/illegal search/seizure/civil rights & supp. state law violations

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   05/21/2015

SIGNATURE OF ATTORNEY OF RECORD
*Fredk E. Charles*

### FOR OFFICE USE ONLY
RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FERNANDO GONZALEZ, ADMINISTRATOR OF    :
THE ESTATE OF JOSE ESTEBAN SANTOS    :
PANIAGUA, A/K/A JOSE SANTOS, A/K/A JOSE    :
ESTEBAN SANTOS,    :
2529 Holland  Avenue, 1 Floor    :
Bronx, New York 10467-8703    :
   :
      and    :
   :
ROXANNE MARTINEZ,    :
1209 Unruh Avenue    :
Philadelphia, Pennsylvania 19111    :
              Plaintiffs    :
   :
      vs.    :    **CIVIL ACTION**
   :
CITY OF PHILADELPHIA,    :    **JURY TRIAL DEMANDED**
1515 Arch Street, 14th Floor    :
Philadelphia, PA 19102    :
   :
MICHAEL A. NUTTER, MAYOR    :
Individually and in his capacity as Mayor of the City    :
of Philadelphia    :
Room 215 City Hall    :
Philadelphia, PA 19107    :
   :
CHARLES H. RAMSEY, CHIEF OF POLICE    :
Individually and his capacity as Chief of Police of the    :
City of Philadelphia    :
One Franklin Square, Room 314    :
Philadelphia, PA 19107    :
   :
PHILADELPHIA POLICE OFFICER THOMAS NOLAN, :
(Badge 3527), Individually and as a police officer for    :
the City of Philadelphia    :
One Franklin Square    :
Philadelphia, PA 19102    :

PHILADELPHIA POLICE OFFICER KENNETH          :
TILLEY (Badge 4919), Individually and as a police   :
officer for the City of Philadelphia                        :
One Franklin Square                                            :
Philadelphia, PA 19102                                       :
                                                                      :
PHILADELPHIA POLICE OFFICER MICHAEL         :
MELVIN, (Badge 1757), Individually and as a police  :
officer for the City of Philadelphia                        :
One Franklin Square                                            :
Philadelphia, PA 19102                                       :
                                                                      :
PHILADELPHIA POLICE OFFICER BALDOMIRO      :
SOARES, (Badge 2827), Individually and as a police   :
officer for the City of Philadelphia                        :
One Franklin Square                                            :
Philadelphia, PA 19102                                       :
                                                                      :
PHILADELPHIA POLICE SERGEANT ROBERT        :
KENNEDY, (Badge 8607), Individually and as a police :
officer for the City of Philadelphia                        :
One Franklin Square                                            :
Philadelphia, PA 19102                                       :
                                                                      :
PHILADELPHIA POLICE LIEUTENANT STEVE        :
NOLAN, (Badge 386), Individually and as a police     :
officer for the City of Philadelphia                        :
One Franklin Square                                            :
Philadelphia, PA 19102                                       :
                                                                      :
                        and                                       :
                                                                      :
PHILADELPHIA POLICE OFFICERS JOHN DOE I,    :
JOHN DOE II, JOHN DOE III and JOHN DOE IV,    :
Individually and as police officers for the City of       :
Philadelphia                                                        :
One Franklin Square                                            :
Philadelphia, PA 19102                                       :
                        Defendants                             :

## COMPLAINT

### I.   JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C.§§ 1331 and 1343 (1), (3) and (4).

2.      This is an action for damages authorized by and/or arising under 42 U.S.C. §§ 1983 and the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States of America.

3.      The matter in controversy exceeds, exclusive of interest and costs, the sum of One Hundred Fifty Thousand ($ 150,000.00) Dollars.

4.      All conditions precedent to jurisdiction have occurred or been complied with.

5.      State claims are brought pursuant to this Honorable Court's supplemental jurisdiction under 28 U.S.C. § 1367 (a).

6.      Venue is proper in the Eastern District of Pennsylvania and pursuant to 28 U.S.C. § 1391. Plaintiff's Decedent and Plaintiff Martinez resided in the Eastern District of Pennsylvania and the alleged unlawful conduct of Defendants, as set forth in this Complaint, which forms the legal basis of the Plaintiffs' claims/causes of action occurred within the Eastern District of Pennsylvania.

### II.   PARTIES

7.      Plaintiff's Decedent, Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos (hereinafter "Plaintiff's Decedent"), was an adult individual whose date of birth was October 31, 1989 and whose principal residence was 1209 Unruh Avenue,

Philadelphia, Philadelphia County, Pennsylvania 19111.

8.     Plaintiff Fernando Gonzalez is an adult individual residing at 2529 Holland

Avenue, 1 Floor, Bronx, New York 10467-8703, who was appointed Administrator of the Estate

of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos pursuant to the

Order of Ronald R. Donatucci, Esquire, Register for the Probate of Wills and Granting Letters of

Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania, on

October 9, 2013, at File Number A4206-2013. A copy of the Letters of Administration is

attached hereto, marked Exhibit "A" and incorporated herein.

9.     Plaintiff Roxanne Martinez (hereinafter "Plaintiff Martinez") is an adult

individual who, at all times relevant to the within cause of action, resided at 1209 Unruh Avenue,

Philadelphia, Philadelphia County, Pennsylvania 19111.

10.     Plaintiff's Decedent resided at the aforesaid address with his fiancee, Plaintiff

Martinez and their minor child, Jayden Santos, DOB: 5-10-2011.

11.     Defendant City of Philadelphia  is a political subdivision of the Commonwealth of

Pennsylvania, situated within the Eastern District of Pennsylvania, with its address at City Hall,

Philadelphia, Pennsylvania 19107. It is incorporated and exists as a city of the First Class under

the laws of the Commonwealth of Pennsylvania and is empowered to establish, regulate and

control its police department for enforcement of laws within its jurisdiction and for the purpose

of protecting and preserving the persons and property within the jurisdiction of the City and

owns, operates, manages, directs and controls the City of Philadelphia Police Department which

employed the defendant police officers at all times relevant to the within action.

12.     The Defendant Michael H. Nutter (hereinafter "Defendant Nutter"), at all

-2-

times relevant to the within action, served as the Mayor of the Defendant City of Philadelphia, with his address at Room 215 City Hall, Philadelphia, Pennsylvania 19107. As Mayor, Defendant Nutter had policymaking authority for the Defendant City of Philadelphia and the police department and was responsible for supervising the actions of the police department and its officers. He is being sued in his individual and official capacities.

13.     As Mayor, Defendant Nutter is an elected official of the Defendant City of Philadelphia, in direct supervision of the police department and its sworn members and also of the selection of the supervisory personnel of the Philadelphia Police Department and, as such, is responsible for the formulation and/or implementation of practices, policies, customs and procedures and for overseeing the day to day operation and command of the police department.

14.     As Mayor, Defendant Nutter is responsible for promulgating and enforcing all rules and regulations concerning the operation of the Philadelphia Police Department. He is further responsible, by himself or through his agents, to investigate the alleged misconduct of police officers, outside of the normal channel of investigation internal to the police department.

15.     At all times relevant to the within action, Defendant Nutter acted within the scope of his duties and authority, under color or title of state or municipal or public law or ordinance and supervised or controlled one or more of Defendants named herein in their conduct and actions or acted in concert with them in performance of their conduct or actions.

16.     The Defendant Charles H. Ramsey (hereinafter "Defendant Ramsey"), at all times relevant to the within action, served as Chief of Police for the City of Philadelphia Police Department, whose address is One Franklin Square, Room 314, Philadelphia, Pennsylvania 19106.

-3-

17.     At all times relevant to the within action, Defendant Ramsey had policymaking authority for the Police Department of the Defendant City of Philadelphia and was responsible for supervising the actions of the police department and its officers.

18.     As Chief of Police, Defendant Ramsey was responsible for the formulation and/or implementation of practices, policies, customs and procedures, control, assignment and discipline of the officers of the Philadelphia Police Department.

19.     As Chief of Police, Defendant Ramsey was responsible for overseeing the day to day operation of the police department and the command and control of all of its officers.

20.     At all times relevant to the within action, Defendant Ramsey was acting within the scope of his duties and under the authority as Chief of Police and acted under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the Defendants named herein in their conduct and actions or acted in concert with them in performance of their conduct or actions.

21.     Defendants Nutter and Ramsey had the ultimate authority for supervising and controlling the officers of the Philadelphia Police Department and Defendant Ramsey is being sued in his individual and official capacities.

22.     Defendant Thomas Nolan, (hereinafter " Defendant Nolan") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Nolan is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

23.     Defendant Nolan is entrusted to protect the constitutional rights of those

-4-

he encounters and, at all times relevant to the within action, acted under his authority and color or title of state or municipal public law or ordinance and acted in concert with one or more of the individual defendants named herein in the performance of their duties or the conduct of their actions. He is being sued in his official and individual capacities.

24.     Defendant Kenneth Tilley, (hereinafter "Defendant Tilley") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Tilley is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

25.     Defendant Tilley is entrusted to protect the constitutional rights of those he encounters and, at all times relevant to the within action, acted under his authority and color or title of state or municipal public law or ordinance and acted in concert with one or more of the individual defendants named herein in the performance of their duties or the conduct of their actions. He is being sued in his official and individual capacities.

26.     Defendant Michael Melvin, (hereinafter "Defendant Melvin") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Melvin is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

27.     Defendant Melvin is entrusted to protect the constitutional rights of those he encounters and, at all times relevant to the within action, acted under his authority and color or title of state or municipal public law or ordinance and acted in concert with one or more of the

individual defendants named herein in the performance of their duties or the conduct of their actions. He is being sued in his official and individual capacities.

28.     Defendant Baldomiro Soares (hereinafter "Defendant Soares") is an adult individual who is currently serving in his capacity as a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Soares is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

29.     Defendant Soares is entrusted to protect the constitutional rights of those he encounters and, at all times relevant to the within action, acted under his authority and color or title of state or municipal public law or ordinance and acted in concert with one or more of the individual defendants named herein in the performance of their duties or the conduct of their actions. He is being sued in his official and individual capacities.

30.     Defendant Robert Kennedy (hereinafter "Defendant Kennedy") is an adult individual who is currently serving in his capacity as a Sergeant and a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Defendant Kennedy is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

31.     Defendant Kennedy is entrusted to protect the constitutional rights of those he encounters and, at all times relevant to the within action, acted under his authority and color or title of state or municipal public law or ordinance and acted in concert with one or more of the individual defendants named herein in the performance of their duties or the conduct of their actions. He is being sued in his official and individual capacities.

-6-

32.     Defendant Steve Nolan,  (hereinafter "Lieutenant Nolan") is an adult individual who is currently serving in his capacity as a Lieutenant and a sworn officer in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officer, Lieutenant Nolan is entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

33.     Lieutenant Nolan is entrusted to protect the constitutional rights of those he encounters and, at all times relevant to the within action, acted under his authority and color or title of state or municipal public law or ordinance and acted in concert with one or more of the individual defendants named herein in the performance of their duties or the conduct of their actions. He is being sued in his official and individual capacities.

34.     Defendants John Doe I, John Doe II, John Doe III and John Doe IV are believed to be Philadelphia Police Officers, whose specific identities are unknown to Plaintiffs and who, on May 25, 2013, conducted an illegal, warrantless search of the premises being occupied by Plaintiff's Decedent and Plaintiff Martinez and who seized and destroyed property belonging to Plaintiff and Plaintiff Decedent and caused damages and injuries more fully described herein.

35.     Defendants John Doe I, John Doe II, John Doe III and John Doe IV, at all times relevant to the within action were serving in their capacities as sworn officers in the Philadelphia Police Department, whose address is One Franklin Square, Philadelphia, Pennsylvania 19106. As a police officers, said Defendants were entrusted with the power to enforce laws of the Commonwealth of Pennsylvania and the City of Philadelphia.

36.     Defendants John Doe I, John Doe II, John Doe III and John Doe IV, were

-7-

entrusted to protect the constitutional rights of those they encountered and, at all times relevant to the within action, said Defendants acted under their authority and color or title of state or municipal public law or ordinance and acted in concert with one or more of the individual defendants named herein in the performance of their duties or the conduct of their actions. Said Defendants are being sued in their official and individual capacities.

## III.   FACTS GIVING RISE TO CAUSE OF ACTION

37.   On Saturday, May 25, 2013, Plaintiff's Decedent resided with Plaintiff Martinez and their minor child, Jayden, at 1209 Unruh Street, Philadelphia, Pennsylvania.

38.   On said date, Plaintiff's Decedent left home, in daylight hours, en route to a store in order to purchase items for his minor child.

39.   On a prior occasion, Plaintiff's Decedent had been attacked, robbed and injured while walking to a store to purchase items for his minor child.

40.   As a result, on May 25, 2013, Plaintiff's Decedent carried a kitchen, cutlery set knife as he walked and ran to the nearby grocery store.

41.   On said date, at approximately 6:35 a.m., a passerby observed the Plaintiff's Decedent walking and/or running with the kitchen knife in his hand in the vicinity of the intersection of Castor Avenue and East Robbins Street, in the Oxford Circle section of Philadelphia, Pennsylvania.

42.   The passerby called 911 Emergency to advise that Plaintiff's Decedent was in the area with a knife in his hand.

43.   The passerby reported no other information in his telephone call to 911 Emergency.

44.     On Saturday, May 25, 2013, at approximately 6:37 a.m. Defendants Nolan and Tilley responded to the 911 Emergency call.

45.     During the time that Plaintiff's Decedent walked and/or ran to the grocery store, he did not encounter any individuals, did not brandish the kitchen knife in any way, committed no crime and engaged in no conduct which necessitated police intervention and/or the excessive actions of the Defendants, as more fully described herein.

46.     While Plaintiff's Decedent was en route to the grocery store, Defendants Nolan and Tilley, while in a police vehicle, approached Plaintiff's Decedent from behind.

47.     At the time that they approached Plaintiff's Decedent from behind in their police vehicle, Defendants Nolan and Tilley were not subject to any threat or risk of imminent harm from Plaintiff's Decedent.

48.     At the time that they initially encountered Plaintiff's Decedent, Defendants Nolan and Tilley had the tactical advantage of distance, spacing, positioning of their armored police vehicle and other non-lethal related options available to initiate contact with Plaintiff's Decedent.

49.     In addition to having the option of placing distance between their police vehicle and Plaintiff's Decedent, Defendants Nolan and Tilley had the option of utilizing extended range impact munition, flexible (bean bag or foam) or non-flexible baton round (hard rubber), prior to using lethal force against Plaintiff's Decedent.

50.     Utilizing the extended range impact munition option would have enabled Defendants Nolan and Tilley to initially encounter and speak with Plaintiff's Decedent from a distance of twenty-five (25) yards.

51.     Utilizing the extended range impact munition option would have further enabled

-9-

both Defendants to re-enter their police vehicle prior to having any physical contacted with Plaintiff's Decedent, in the event that he failed to respond to their instructions.

52.     At the time they initially encountered Plaintiff's Decedent, Defendants Nolan and Tilley, were positioned in an armored vehicle which could not be penetrated by a kitchen knife.

53.     At the time Defendants Nolan and Tilley initially encountered Plaintiff's Decedent, they were obligated to follow acceptable police standards of conduct which mandate that police officers control their proximity to any threat.

54.     Without giving any proper notice or warning to Plaintiff's Decedent and while Plaintiff's Decedent's back was facing the police vehicle, Defendants Nolan and Tilley initiated contact with Plaintiff's Decedent by striking him from behind with the police vehicle.

55.     By striking Plaintiff's Decedent with the police vehicle as their means of initial contact and use of force, Defendants Nolan and Tilley disregarded numerous lesser options on the use of force continuum and violated the acceptable standards of police conduct.

56.     The force with which the police vehicle being operated by Defendant Nolan struck Plaintiff's Decedent resulted in Plaintiff's Decedent suffering a broken leg and other serious injuries.

57.     By utilizing his police vehicle as the means to initially contact and strike Plaintiff's Decedent, Defendants Nolan and Tilley improperly entered the use of force continuum at the lethal force stage.

58.     Any alleged imminent risk of harm or imminent jeopardy to Defendants Nolan and Tilley were created solely by their conduct which violated acceptable police standards.

59.     After being struck from behind by the police vehicle with impact and ferocity

-10-

sufficient to break his leg, Plaintiff's Decedent was incapable of standing, walking or charging the defendant officers.

60.     After being struck from behind by the police vehicle, Plaintiff's Decedent fell to the street, writhing in great pain and suffering from what appeared to be convulsions.

61.     After Plaintiff's Decedent was struck by the police vehicle, Defendants Nolan and Tilley exited their vehicle and drew their firearms.

62.     At the aforesaid time that Defendants Nolan and Tilley drew their weapons, Defendants Soares and Melvin arrived at the scene.

63.     As the Plaintiff's Decedent remained on the street in a prone position, suffering what appeared to be convulsions, Defendant Soares deployed his OC pepper spray upon Plaintiff's Decedent and Defendant Melvin left the area in order to retrieve his ECW taser from his police vehicle.

64.     Defendant Soares disregarded proper police procedures and administered unnecessary and excessive force upon Plaintiff's Decedent by spraying him with pepper spray while he remained in a prone position on the street, suffering from a broken leg and what appeared to be convulsions.

65.     As a result of the force with which the police vehicle struck the Plaintiff's Decedent, he was rendered incapable of standing or walking in any direction.

66.     At no time was Plaintiff's Decedent capable of charging nor did he ever charge Defendants Nolan, Tilley, Soares or Melvin.

67.     While Plaintiff's Decedent remained in a prone position on the street, writhing

and convulsing with pain from having sustained a broken leg, he continued to clutch the kitchen knife in his hand.

68.     Defendant Nolan fired four (4) rounds at Plaintiff's Decedent from his Glock Model 21, .45 caliber, semi-automatic pistol and Defendant Tilley fired seven (7) rounds at Plaintiff's Decedent from his Glock Model 21, .45 caliber, semi-automatic pistol.

69.     Five (5) .45 caliber bullets were removed from Plaintiff's Decedent's body and one (1) bullet was retrieved from his clothing.

70.     All of the Plaintiff's Decedent's wound tracks were consistent with the firearms being discharged by the defendant officers while they were standing upright and while Plaintiff's Decedent was in a prone position on the street.

71.     Three (3) of the bullets striking Plaintiff's Decedent were fired from Defendant Nolan's gun, one (1) bullet was fired from Defendant Tilley's gun, one (1) bullet could not be compared to either weapon and  all of the bullets entered his body from the back or side.

72.     After the shooting, Defendant Kennedy arrived at the shooting location.

73.     After the shooting, Plaintiff's Decedent remained in a prone position on the street, with a portion of his body under the police vehicle, at which time Defendants Melvin, Soares and Kennedy stood over the Plaintiff's Decedent, stepped on his arm and removed the kitchen knife from his hand.

74.     After the aforesaid shooting, Plaintiff's Decedent remained conscious while in a prone position on the street and partially under the police vehicle.

75.     Plaintiff Martinez arrived at the shooting scene and was prevented by the Defendants from speaking with or comforting Plaintiff's Decedent.

-12-

76.     Plaintiff's Decedent was transferred by ambulance to the Aria Health-Torresdale Hospital, Philadelphia, Pennsylvania.

77.     The aforesaid Defendants further prevented and prohibited Plaintiff Martinez from accompanying Plaintiff's Decedent in the ambulance during the transport to Aria Health-Torresdale Hospital, during which time Plaintiff's Decedent remained conscious.

78.     Plaintiff's Decedent remained conscious from the time he was initially struck by the police vehicle at 6:40 a.m., during his transport to Aria Health -Torresdale Hospital, during the period that he was administered to at the hospital and until 9:17 a.m.

79.     As a result of the grievous injuries he sustained due to the conduct of the aforesaid Defendants, Plaintiff's Decedent died at 9:17 a.m., on Saturday, May 25, 2013, at the age of twenty-three (23).

80.     Plaintiff's Decedent experienced conscious pain and suffering after being struck by the police vehicle, being shot six (6) times, being transported to Aria Health - Torresdale Hospital and during his time in the hospital leading to his death.

81.     After Plaintiff's Decedent was transported to Aria Health-Torresdale Hospital, Plaintiff Martinez returned to her residence and to her minor child.

82.     While Plaintiff Martinez was present with her child at her residence, the above-named Defendants and/or uniformed Philadelphia police officers, whose identities are unknown to Plaintiffs and who are identified herein as John Doe I, John Doe II, John Doe III and John Doe IV, appeared at Plaintiff Martinez' residence at 1209 Unruh Street, Philadelphia, Pennsylvania.

83.     Defendants, without probable cause, a search warrant and/or consent, forced their way into said residence and, in the presence of the Plaintiff Martinez and her minor child,

-13-

conducted an exhaustive, exploratory, unwarranted and illegal search of said residence.

84.     Defendants, in the presence of the minor child, questioned Plaintiff Martinez as to the location where Plaintiff's Decedent kept controlled substances and weapons.

85.     The conduct of Defendants Nolan and Tilley, in utilizing a police vehicle to strike Plaintiff's Decedent from behind without warning while he was lawfully en route to a grocery store was pursuant to a policy promulgated, created, accepted and/or acquiesced to by the Defendants City of Philadelphia, Nutter, Ramsey and the supervisory/management level employees of the Philadelphia Police Department.

86.     The conduct of Defendant Soares in failing to intervene and in administering pepper spray to the Plaintiff's Decedent was pursuant to a policy and was promulgated, created, accepted and/or acquiesced to by the Defendants City of Philadelphia, Nutter, Ramsey and the supervisory/management level employees of the Philadelphia Police Department.

87.     The conduct of Defendant Melvin in failing to intervene was pursuant to a policy and was promulgated, created, accepted and/or acquiesced to by the Defendants City of Philadelphia, Nutter, Ramsey and the supervisory/management level employees of the Philadelphia Police Department.

88.     The conduct of Defendants Nolan and Tilley in applying lethal force and discharging their firearms eleven (11) times at Plaintiff's Decedent while he was in a prone position on the street was pursuant to a policy and was promulgated, created, accepted and/or acquiesced to by the Defendants City of Philadelphia, Nutter, Ramsey and the supervisory/ management level employees of the Philadelphia Police Department.

89.     Defendants Nolan and Tilley manufactured that they were in "imminent jeopardy"

-14-

in order to justify their illegal action and use of lethal force, in violation of all acceptable police standards.

90.     The conduct of the Defendants in conducting an illegal, warrantless search without probable cause of Plaintiff Martinez' residence and in terrifying Plaintiff Martinez and her minor child, was pursuant to a policy which was promulgated, created, accepted and/or acquiesced to by the Defendant City of Philadelphia, Defendant Nutter and Defendant Ramsey.

91.     Defendants City of Philadelphia, Nutter, Ramsey and supervisory/management level employees of the Philadelphia Police Department have further promulgated customs and policies which authorize, accept, condone and fail to punish illegal, warrantless searches of civilians, such as Plaintiff Martinez and their residences.

92.     Defendant officers acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's Decedent by engaging in the above-described conduct.

93.     Defendant officers disregarded proper police practices regarding the use of search warrants and the prohibitions against conducting warrantless searches without probable cause or consent.

94.     Defendant officers acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff Martinez by conducting the aforesaid illegal, warrantless search without probable cause or consent and by terrifying Plaintiff Martinez and her minor child.

95.     Defendant City of Philadelphia, by and through the Defendants Nutter, Ramsey and the supervisory and/or management level employees of the Philadelphia Police Department, knew or should have known that the Defendants were engaging in the above-

-15-

described wrongful, illegal and unconstitutional conduct and took no action to prevent said conduct.

96.     Defendant City of Philadelphia, by and through Defendants Nutter, Ramsey and the actions of the supervisors and management level employees of the Philadelphia Police Department created, adopted, participated in and/or acquiesced to the above-described negligent, improper, wrongful, illegal and unconstitutional conduct of the Defendants.

97.     Defendant City of Philadelphia, by its customs and/or the actions of Defendants Nutter, Ramsey and the supervisors and management level employees and officers of the Philadelphia Police Department, acting under the color of state law and motivated by prejudice against the Plaintiff's Decedent as aforesaid, has violated and deprived the Plaintiff's Decedent and Plaintiff Martinez of rights, privileges and immunities procured by the Constitution and the laws of the United States of America and the Commonwealth of Pennsylvania thereby causing the injuries and damages to Plaintiff's Decedent and Plaintiff Martinez as more fully described herein.

98.     Defendant City of Philadelphia has failed to properly discipline the defendant officers and other officers in the police department in cases involving violations of the rights of civilians, including cases involving the use of excessive force and improper searches and seizures.

99.     Defendant City of Philadelphia has encouraged, tolerated, ratified and been deliberately indifferent to patterns, practices and customs of its police officers and the need for more or different training, supervision, investigation or disciplines in areas of unlawful stops, the use of improper and excessive force during improper stops and conducting illegal, warrantless

-16-

searches and seizures without probable cause or consent.

100.    Defendant City of Philadelphia has further failed or refused to take remedial or disciplinary action against police officers who use their status as a law enforcement officer to unlawfully stop citizens and who employ excessive force in stopping and interacting with citizens who, like Plaintiff's Decedent, have committed no crime or violation of the laws of the United States of America and the Commonwealth of Pennsylvania.

101.    Defendant City of Philadelphia encouraged, tolerated, ratified and has been deliberately indifferent to patterns, practices and customs of its police officers, including police officers' failure to follow proper procedures and guidelines and to invoke a code of silence or to wrongfully and deliberately give sworn or unsworn testimony supporting the actions and conduct of fellow officers, regardless of whether said actions and conduct violated the rights of civilians and the laws of the United States of America and the Commonwealth of Pennsylvania.

102.    Defendant City of Philadelphia encouraged, tolerated, ratified and has been deliberately indifferent to patterns, practices of its police officers including the refusal of police officers to intervene when other officers violate the rights of citizens in their presence and the refusal of police officers to report or provide information concerning the misconduct of other officers, thereby adhering to a custom or practice known as "the Blue Wall" and/or "the Code of Silence".

103.    Defendant City of Philadelphia is deliberately indifferent to the need to train, supervise and discipline police officers, including the officers named as defendants herein.

104.    The Internal Affairs Division (hereinafter "IAD") of the Philadelphia Police Department fails to provide an internal disciplinary mechanism that imposes meaningful

disciplinary and remedial actions and allows excessive delays in resolving disciplinary issues.

105.    The IAD of the Philadelphia Police Department fails to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions and has failed to effectively discipline numerous officers who have engaged in wrongful conduct, such as the conduct of the defendants named herein.

106.    The IAD of the Philadelphia Police Department has failed to impose meaningful disciplinary and remedial actions or consistent, rational and meaningful disciplinary and remedial remedies.

107.    The internal investigatory process for the IAD of the Philadelphia Police Department is arbitrary, inconsistent and fails to meet the acceptable standards for investigating the improper conduct of police officers, including the conduct of the defendants named herein.

108.    In the within matter, the IAD failed to conduct a proper investigation or to fully compare the version of facts offered by Defendants Nolan, Tilley, Soares and Melvin with the available forensic evidence and available witness testimony.

109.    Defendants Soares and Melvin failed to rebut or reject the version of what had transpired, as offered by Defendants Nolan and Tilley in their attempt to justify their failure to intervene and failure to report the improper use of lethal force by Defendants Nolan and Tilley.

110.    Defendant Melvin stated that he witnessed Defendant Soares apply OC pepper spray on Plaintiff's Decedent, however, he did not witness the discharge of firearms by Defendants Nolan and Tilley because he had left the area to retrieve his ECW taser.

111.    Defendant Melvin offered his version of what had transpired in an attempt to justify his failure to intervene on behalf of Plaintiff's Decedent.

-18-

112.     Defendant Kennedy arrived at the scene after firearms had been discharged by Defendants Nolan and Tilley and assisted in removing the knife from the hand of Plaintiff's Decedent, who had been shot six (6) times.

113.     Defendant Kennedy failed to conduct a proper investigation as to what had transpired, failed to interview all available witnesses and gave a statement and/or issued a report which supported the version offered by Defendants Nolan, Tilley, Soares and Melvin.

114.     Lieutenant Nolan, a named Defendant herein, conducted an investigation on behalf of the Philadelphia Police Department IAD, however, he failed and/or refused to conduct a proper investigation and interview all available witnesses as to the events leading up to the use of deadly force by Defendants Nolan and Tilley.

115.     The shooting of Plaintiff's Decedent occurred on May 25, 2013, however, Lieutenant Nolan did not interview Defendant Thomas Nolan until March 20, 2014.

116.     Despite the fact that the shooting took place on May 25, 2013, Lieutenant Nolan did not interview Defendant Tilley until April 15, 2014.

117.     Defendants Nolan, Tilley and Soares manufactured their versions of the facts leading to the discharge of firearms and use of lethal force by Defendants Nolan and Tilley and the use of OC pepper spray by Defendant Soares,

118.     The aforesaid manufactured version of the facts offered by Defendants in their al attempt to justify the discharge of their firearms, the use of OC pepper spray and the use of lethal force against Plaintiff's Decedent was rebutted and proved false by the scientific evidence and testimony of a witness to the incident.

119.     Defendant Melvin joined in the manufactured testimony of Defendants Nolan,

Tilley and Soares, in order to support their justification for their actions, including the use of OC pepper spray and lethal force upon Plaintiff's Decedent.

120.    Defendant Kennedy also joined in the manufactured testimony of the aforesaid Defendants and supported their version of the facts and their justification for their actions.

121.    Lieutenant Nolan, in completing his investigation, summarily approved and/or "rubber-stamped" the factual version offered by the defendant officers who participated in the above-described incident which resulted in the death of Plaintiff's Decedent.

122.    As a result of the inadequate, ineffective and substandard customs, policies and practices of the IAD, as set forth above, no proper or meaningful investigation was conducted concerning the conduct of Defendants Nolan, Tilley, Soares, Melvin, Kennedy or of the officers who conducted an illegal, warrantless search of Plaintiff Martinez' residence, without probable cause or consent.

123.    Lieutenant Nolan failed to recommend any meaningful discipline against any of the above-named Defendants and on the contrary, found that the defendants conduct met or complied with the policies and customs of the police department, including Directive 10 of the Philadelphia Police Department's policy pertaining to the use of deadly force.

124.    Lieutenant Nolan's reports and recommendations were summarily approved and "rubber-stamped" by Captain Frank McIlhenny of the Internal Affairs Division.

125.    The initial report and recommendation completed by Lieutenant Nolan and approved by Captain McIlhenny was also summarily approved and/or "rubber-stamped" by Inspector H. Robert Snyder of the Internal Affairs Division and adopted and approved by the Defendants City of Philadelphia, Nutter and Ramsey.

-20-

126.    The conduct of the IAD investigation demonstrates that its personnel are not adequately trained and supervised in the proper conduct of investigations involving assault and battery utilizing a police vehicle, the use of OC pepper spray upon a helpless victim, the use of excessive force by firing eleven (11) rounds at a helpless victim and the execution of illegal and warrantless searches without probable cause and consent.

127.    A review of the investigatory procedures of the IAD of the Philadelphia Police Department reveals a pattern of administrative conduct wherein all benefits of the doubt are given to the police officers as opposed to citizens/civilians.

128.    The investigations of the IAD of the Philadelphia Police Department regularly fail to impose meaningful discipline and/or remedial actions upon its police officers and said investigations regularly lack quality and contain serious deficiencies.

129.    In the within matter, the IAD findings and/or the report/recommendation of Lieutenant Nolan lacked quality, contained serious deficiencies and invalid, false findings and conclusions.

130.    Lieutenant Nolan and the other investigating officers for the Defendant City of Philadelphia failed to interview all available witnesses to the shooting death of the Plaintiff's Decedent and the subsequent illegal, warrantless search of his residence.

131.    The interviews that were conducted by the IAD investigators and the other investigators for the Defendant City of Philadelphia were incomplete, focused on the self-serving justifications offered by the officers in question and failed to address key issues in the case, including the officers' use of excessive, lethal force and execution of illegal, warrantless search without probable cause or consent.

-21-

132.     The investigation conducted by the IAD and the investigators for the Defendant City of Philadelphia fell below the acceptable police standards, including police standards for an investigation involving use of lethal force against a citizen, an illegal search and seizure of his or her residence and the terrorizing of the inhabitants of said residence.

133.     As a direct and proximate result of the policies, customs, omissions, failure to properly investigate or take proper remedial or disciplinary action against police officers, especially those who used lethal force against citizens, during the period from January 1, 2013, through May 25, 2013, there were nineteen (19) civilian shootings by Philadelphia police officers and twenty-eight (28) civilian shootings by Philadelphia police officers during the same period in the calendar year 2012.

134.     As a direct and proximate result of the policies, customs, omissions, failure to properly investigate or take proper remedial or disciplinary action against police officers, especially those who used lethal force against citizens, during the week of May 19, 2013, through May 25, 2013, there were six (6) civilian shootings by Philadelphia police officers.

135.     As a direct and proximate result of the policies, customs, omissions, failure to properly investigate or take proper remedial or disciplinary action against police officers, especially those who used lethal force against citizens, during the calendar years 2007 through 2013, there were four hundred (400) civilian shootings by Philadelphia police officers.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1983**
**FEDERAL CIVIL RIGHTS VIOLATIONS**
**FERNANDO GONZALEZ, ADMINISTRATOR VS. ALL DEFENDANTS**

136.     Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-135 as

-22-

though the same were more fully set forth at length herein.

137.    The Defendants, at all times relevant to the within matter acted under color of state law and deprived Plaintiffs of their federal constitutional rights.

138.    The conduct of Defendant Nolan in utilizing a police vehicle to strike Plaintiff's Decedent, break his leg and knock him to the ground, demonstrated a deliberate indifference to the rights of the Plaintiff's Decedent, including subjecting the Plaintiff's Decedent to the risk of harm and to harm.

139.    The conduct of Defendants Nolan and Tilley in discharging their weapons eleven (11) times at Plaintiff's Decedent after he was incapacitated by being struck by the police vehicle operated by Defendant Nolan, demonstrated a deliberate indifference to the rights of the Plaintiff's Decedent, including subjecting the Plaintiff's Decedent to the risk of harm and to harm.

140.    The conduct of Defendant Soares in refusing to intervene on Plaintiff's Decedent's behalf and on the contrary in administering OC pepper spray to Plaintiff's Decedent while he laid convulsing on the ground with a broken leg demonstrated a deliberate indifference to the rights of the Plaintiff's Decedent and subjected Plaintiff's Decedent to the risk of harm and to harm.

141.    The conduct of Defendant Melvin in refusing to intervene on Plaintiff's Decedent's behalf and on the contrary, in leaving the Plaintiff's Decedent in order to retrieve an ECW taser and to tase the Plaintiff's Decedent while he laid convulsing on the ground with a broken leg, demonstrated a deliberate indifference to the rights of the Plaintiff's Decedent, including subjecting the Plaintiff's Decedent to the risk of harm and to harm.

-23-

142.     Defendant officers named herein, while acting under color of state law and agents, servants and employees of Defendants City of Philadelphia, Nutter and Ramsey, had visual contact with Plaintiff's Decedent prior to illegally striking him with the police vehicle.

143.     At all times relevant to the within action, Plaintiff's Decedent took no action which justified his being struck by the police vehicle being operated by Defendant Nolan.

144.     Plaintiff's Decedent offered no resistance to justify the conduct of Defendants Nolan and Tilley in initially striking Plaintiff's Decedent with the police vehicle.

145.     Defendants Nolan and Tilley had visual contact with Plaintiff and had the option of entering the use of force continuum at the non-lethal stage.

146.     Defendants Nolan and Tilley had other non-lethal options available to them, however, they chose to enter the use of force continuum at the lethal stage.

147.     Defendants Nolan and Tilley illegally used excessive force against Plaintiff's Decedent, resulting in Plaintiff's Decedent sustaining a broken leg and being shot six (6) times.

148.     Defendant Soares used excessive force by administering OC pepper spray to Plaintiff's Decedent after Plaintiff's Decedent had been struck by the police vehicle operated by Defendant Nolan, sustained a broken leg and was convulsing in a prone position on the street.

149.     As a direct and proximate result of the actions of the defendant officers, Plaintiff's Decedent was deprived of rights, privileges and immunities granted him by the laws and the constitution of the United States of America, including the Fourth, Eighth and Fourteenth Amendments, and 42 U.S.C. § 1983, all to Plaintiff's Decedent's great detriment and loss.

150.     The actions of Defendants Nolan, Tilley, Soares and Melvin were willful, wanton, malicious, oppressive and unjustified.

-24-

151.    The actions of the Defendants Nolan, Tilley, Soares and Melvin were accepted, acquiesced to, condoned, adopted, ratified and participated in by Defendant Kennedy, Lieutenant Steve Nolan and the other defendants named herein.

152.    As a result of the action of the defendants, as set forth above Plaintiff's Decedent is entitled to punitive damages and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos, respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 1983**
**SUBSTANTIATIVE DUE PROCESS VIOLATION**
**FERNANDO GONZALEZ, ADMINISTRATOR VS. ALL DEFENDANTS**

153.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-152 as though the same were more fully set forth at length herein.

154.    The conduct of Defendants Nolan, Tilley, Melvin and Soares was willful, reckless, grossly negligent and deliberately indifferent to the life and safety to Plaintiff's Decedent.

155.    The conduct of Defendants Nolan, Tilley, Melvin and Soares constitutes a violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and to the Plaintiff's Decedent's right to personal security, to life and liberty and to be free from

-25-

arbitrary, reckless and  punitive government action which shocks the conscience.

156.    As a direct and proximate result of the above-described conduct of Defendants Nolan, Tilley, Melvin and Soares, Plaintiff's Decedent sustained grievous injuries resulting in his death on May 25, 2013.

157.    The actions of Defendants Nolan, Tilley, Soares and Melvin were willful, wanton, malicious, oppressive and unjustified.

158.    The actions of the Defendants Nolan, Tilley, Soares and Melvin were accepted, acquiesced to, condoned, adopted, ratified and participated in by Defendant Kennedy, Lieutenant Nolan and Defendants City of Philadelphia, Nutter and Ramsey.

159.    As a result of the action of the defendants, as set forth above Plaintiff's Decedent is entitled to punitive damages and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos, respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

### COUNT III
### VIOLATION OF 42 U.S.C. § 1983
### SUPERVISORY LIABILITY
### PLAINTIFFS VS . INDIVIDUAL DEFENDANTS

160.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1- 159 as though the same were more fully set forth at length herein.

161.    One or more of the Defendants acted in a supervisory or management capacity under circumstances and during the period when one or more of the subordinated Defendants violated the rights of the Plaintiff's Decedent and Plaintiff Martinez, as set forth herein.

162.    The actions of the defendant officers were accepted, approved, condoned and acquiesced to by the Defendant City of Philadelphia, Defendant Nutter, Defendant Ramsey, Defendant Lieutenant Nolan, Defendant Kennedy and those defendants who acted in a management or supervisory capacity.

163.    The supervisory defendants, known or unknown at the present time, directed the conduct which resulted in the violation of the federal rights of the Plaintiff's Decedent and Plaintiff Martinez as alleged or had actual knowledge of the violation of said federal rights by he subordinate defendants and accepted, approved, condoned and acquiesced in said violations.

164.    Said supervisory defendants acted with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation of the civil rights of Plaintiff's Decedent and Plaintiff Martinez or failed to maintain or enforce a policy under circumstances wherein one or more policies or regulations were necessary to protect the rights of Plaintiff's Decedent, Plaintiff Martinez and other citizens.

165.    The supervisory defendants, known or unknown, had some specific knowledge of the unconstitutional conduct of Officers of the Philadelphia police force and intentionally acquiesced in this conduct by failing to establish proper procedures or by failing to adequately train and supervise police officers.

166.    The conduct of the supervisory defendants was a proximate cause of the injuries and damages suffered by Plaintiff's Decedent and Plaintiff Martinez as set forth herein and said

-27-

Defendants' failure to train or supervise the defendant officers named herein caused the

Plaintiff's Decedent and Plaintiff Martinez to be deprived of their civil rights and as such, said

supervisory Defendants are personally liable for all damages and injuries to Plaintiff's Decedent

and Plaintiff Martinez.

167.    The illegal and improper actions of the defendant officers named herein were a

direct result of their lack of proper training and supervision.

168.    As a further result of the aforesaid deficient supervision of the defendant officers

by the supervisory defendants, Plaintiff's Decedent and Plaintiff Martinez suffered the damages

set forth herein.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban

Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos and Plaintiff Roxanne Martinez,

respectfully request that this Honorable Court enter judgment in their favor and against the

Defendants in the amount of all damages, including compensatory damages, punitive damages

against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42

U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

## COUNT IV
## VIOLATION OF 42 U.S.C. § 1983
## NON-SUPERVISORY LIABILITY-FAILURE TO INTERVENE
## FERNANDO GONZALEZ, ADMINISTRATOR VS. DEFENDANT MELVIN

169.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-168 as

though the same were more fully set forth at length herein.

170.    Defendant Melvin is liable for failing to intervene to prevent the constitutional

-28-

violations of the federally protected rights of Plaintiff's Decedent by Defendant's Nolan, Tilley, Soares and other offenders whose identities are presently unknown to Plaintiffs.

171.    Defendant Melvin had a duty to intervene, including to prevent the administering of OC pepper spray to Plaintiff's Decedent while he was convulsing on the ground and to prevent his being shot six (6) times by Defendants Nolan and Tilley.

172.    Defendant Melvin had a reasonable opportunity to intervene and failed and refused to do so.

173.    Defendant Melvin is therefore liable for the harm and injuries suffered by Plaintiff's Decedent and for the harm suffered by Plaintiffs herein.

174.    The refusal to intervene by Defendant Melvin was willful, wanton, malicious, oppressive and unjustified.

175.    The conduct of Defendant Melvin was accepted, acquiesced to, condoned, adopted, ratified and participated in by Defendant Kennedy, Lieutenant Nolan and the other defendants named herein.

176.    As a result of the action of the defendants, as set forth above Plaintiff's Decedent is entitled to punitive damages and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Melvin for failing to intervene and against all named Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants, interest, injunctive

relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable

Court deems just and reasonable.

## COUNT V
## VIOLATION OF 42 U.S.C.  § 1983
## NON-SUPERVISORY LIABILITY-FAILURE TO INTERVENE
## FERNANDO GONZALEZ, ADMINISTRATOR VS. DEFENDANT SOARES

177.   Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-176 as

though the same were more fully set forth at length herein.

178.   Defendant Soares is liable for failing to intervene to prevent the constitutional

violations of the federally protected rights of Plaintiff's Decedent by Defendants Nolan, Tilley,

Melvin and other offenders whose identities are presently unknown to Plaintiffs.

179.   Defendant Soares had a duty to intervene, including to prevent the administering

of lethal force by Defendants Nolan and Tilley against Plaintiff's Decedent while he was

convulsing and helpless after being struck by the police vehicle operated by Defendant Nolan and

after sustaining a broken leg due to the ferocity of the impact upon his leg by the police vehicle.

180.   Defendant Soares had a reasonable opportunity to intervene and failed and

refused to do so.

181.   Defendant Soares is therefore liable for the harm and injuries suffered by

Plaintiff's Decedent and for the harm suffered by Plaintiffs herein.

182.   The refusal to intervene by Defendant Soares was willful, wanton, malicious,

oppressive and unjustified.

183.    The conduct of Defendant Soares was accepted, acquiesced to, condoned, adopted, ratified and participated in by Defendant Kennedy, Lieutenant Steve Nolan and the other defendants named herein.

184.    As a result of the action of the defendants, as set forth above Plaintiff's Decedent is entitled to punitive damages and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Soares for failing to intervene and against all named Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

### COUNT VI
### VIOLATION OF 42 U.S.C. § 1983 - CONSPIRACY
### PLAINTIFFS VS. ALL DEFENDANTS

185.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-184 as though the same were more fully set forth at length herein.

186.    Defendants acting under color of state law and motivated by prejudice against the Plaintiffs, conspired with each other for the purpose of impeding, obstructing, hindering and defeating the due course of justice and with the intent to deny Plaintiff's Decedent and Plaintiff Martinez their rights under the Fourth, Eighth and Fourteenth amendments of the United States Constitution.

-31-

187.    Defendants conspired to engage in the conduct alleged above, whereby each Defendant acted in concert, pursuant to an agreement, to cause the states harms and facilitated the conspiratorial objective of inflicting the resulting harms upon Plaintiff's Decedent and Plaintiff Martinez by their own acts or omissions or by those of fellow co-conspirators.

188.    In furtherance of the aforesaid conspiracy, the Defendants committed, as overt acts, those acts set forth above, thereby causing the Plaintiff's Decedent and Plaintiff to suffer and sustain the deprivations, injuries and special damages more fully set forth herein.

189.    Each Defendant named herein acted in concert and pursuant to an agreement to cause the harm or harms to the Plaintiff's Decedent and Plaintiff Martinez as described herein.

190.    Each Defendant facilitated in some way the conspiratorial objective of inflicting harm upon the Plaintiff's Decedent and Plaintiff Martinez by his own act or omission or by those of fellow co-conspirators.

191.    Each Defendant named herein acted in concert and pursuant to a conspiratorial objective and agreement to justify the initial contact with Plaintiff's Decedent by police vehicle, to justify the use of OC pepper spray on Plaintiff's Decedent and to justify the use of deadly force against Plaintiff's Decedent.

192.    Each Defendant named herein acted in concert and pursuant to a conspiratorial objective and agreement to support the official version of facts offered by the defendant officers, to support the use of deadly force and the failure of defendant officers to intervene and protect Plaintiff's Decedent.

193.    Each Defendant named herein acted in concert and pursuant to a conspiratorial objective and agreement to justify an incomplete, incompetent, biased investigation of this

-32-

incident and to justify and "rubber-stamp" the version of the incident offered by the defendant officers initially called to the scene of the above-described incident.

194.   The damages and injuries suffered by Plaintiff's Decedent and Plaintiff Martinez were the direct and proximate result of the aforesaid conspiracy engaged in by each Defendant.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos and Plaintiff Roxanne Martinez respectfully request that this Honorable Court enter judgment in their favor and against the Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

### COUNT VII
### VIOLATION OF 42 U.S.C. § 1983
### FOURTH AND FOURTEENTH AMENDMENTS - ILLEGAL SEARCH
### PLAINTIFF MARTINEZ VS. DEFENDANTS

195.   Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-194 as though the same were more fully set forth at length herein.

196.   The above-named defendant officers and/or officers whose identities are unknown to Plaintiffs and who are named as John Doe I, John Doe II, John Doe III and John Doe IV herein, at the direction of management level/supervisory employees of the Defendant City of Philadelphia and pursuant to the customs and policies more fully described herein, appeared at Plaintiff Martinez' residence at 1209 Unruh Street, Philadelphia, Pennsylvania, on May 25, 2013, subsequent to the shooting of Plaintiff's Decedent.

-33-

197.    Defendant officers named herein, while acting under color of state law and as agents, servants and employees of the Defendants City of Philadelphia, Nutter and Ramsey, without probable cause, proper warrant or proper complaint, appeared at the residence of Plaintiff's Decedent and Plaintiff Martinez.

198.    Said officers, without probable cause, warrant or consent broke into said residence and conducted an illegal and warrantless, exploratory search of said residence.

199.    In the presence of Plaintiff Martinez' minor child, Jayden, said officers demanded that Plaintiff Martinez take them to the location where Plaintiff's Decedent kept illegal controlled substances and weapons.

200.    Said officers repeated their demands in the presence of the minor child, despite Plaintiff Martinez' repeated protestations that no controlled substances or weapons were kept in her residence by Plaintiff's Decedent or Plaintiff Martinez.

201.    During the period that they conducted the illegal and warrantless search, the aforesaid officers prohibited Plaintiff Martinez and her minor child from leaving their residence.

202.    During the period that the officers were conducting the illegal and warrantless search, Plaintiff Martinez received a telephone call notifying her that Plaintiff's Decedent had died at the Aria Health-Torresdale Hospital.

203.    As a result of the illegal conduct of the Philadelphia police officers, as ordered by the management level/supervisory police personnel, accepted, condoned and participated in by the above-named Defendants, Plaintiff Martinez and the minor child, Jayden were wrongfully and illegally deprived of spending any time with Plaintiff's Decedent during the last hours and minutes of his life.

-34-

204.    At the time of the aforesaid search, Defendants lacked probable cause for a search warrant to search Plaintiff Martinez, Plaintiff's Decedent or their residence and further lacked probable cause to arrest Plaintiff Martinez or Plaintiff's Decedent on any criminal charges.

205.    The illegal and wrongful conduct of the aforesaid officers, as ordered, accepted, condoned and participated in by the management level/supervisory police employees and the Defendants named herein was pursuant to the customs and policies of the Defendant City of Philadelphia, as more fully described herein.

206.    As a result of the aforesaid illegal and wrongful conduct of the Defendants, Plaintiff Martinez and her minor child, Jayden were terrorized and traumatized and suffered the damages more fully described herein.

207.    Defendants' illegal and warrantless search of the aforesaid premises was not incident to a lawful arrest of Plaintiff's Decedent or Plaintiff Martinez.

208.    Defendants' conduct violated the rights of Plaintiff's Decedent and Plaintiff Martinez of the rights, privileges and immunities as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the applicable statutes and case law therein.

WHEREFORE, Plaintiff Roxanne Martinez respectfully requests that this Honorable Court enter judgment in her favor and against the Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

## COUNT VIII
## VIOLATION OF 42 U.S.C. § 1983-MUNICIPAL LIABILITY
## PLAINTIFFS VS. DEFENDANT CITY OF PHILADELPHIA

209.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-208 as though the same were more fully set forth at length herein.

210.    Prior to May 25, 2013, the Defendant City of Philadelphia developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Philadelphia, which caused the violation of the rights of the Plaintiff's Decedent and Plaintiff Martinez.

211.    The actions and conduct of the defendant officers in the within matter were caused by a policy, practice and custom of the Defendant City of Philadelphia of failing, with deliberate indifference, to supervise and properly train its police officers in the use of lethal force, in reporting and disclosing misconduct and illegal actions of fellow police officers, in properly executing search warrants and in providing truthful information to IAD investigators and to the District Attorney's Office.

212.    Defendant City of Philadelphia has failed to properly discipline defendant officers and other officers in the police department in cases involving violations of rights of citizens including cases involving improper tactics for stopping citizens/civilians, use of excessive and/or lethal force and improper, warrantless searches and seizures without probable cause and/or consent.

213.    Defendant City of Philadelphia maintained a grossly, systemically deficient process of review of police misconduct, including abuse of police powers or violations of citizens' rights by police officers.

-36-

214.     Defendant City of Philadelphia has failed to identify instances of abusive police powers or violations of citizens' rights by police officers or to discipline, more closely supervise or re-train officers who abuse their police powers or violate citizens' rights, including Defendants Nolan, Tilley, Melvin, Soares, John Doe I, John Doe II, John Doe III and John Doe IV.

215.     The lack of meaningful investigation, supervision and discipline of officers accused of misconduct was a custom so deeply ingrained as to constitute the actual policy of Defendant City of Philadelphia.

216.     Defendant City of Philadelphia was deliberately indifferent to the need for a system of discipline that insured consistent and certain punishment for police officers who violated the rights of citizens or departmental directives.

217.     Defendant City of Philadelphia failed to devote adequate staff and resources to litigating officer appeals of Police Commissioner's disciplinary decisions.

218.     Defendant City of Philadelphia failed to adequately train its staff or otherwise provide them with training and support to litigate officer appeals of the Police Commissioner's disciplinary decisions.

219.     Defendant City of Philadelphia failed to insure timely investigations, disciplinary proceedings, disciplinary decisions and hearings on appeals of the Police Commissioner's disciplinary decisions.

220.     Defendant City of Philadelphia failed to insure that its staff was prepared to litigate officer appeals of the Police Commissioner's disciplinary decisions.

221.    The lack of a system of discipline that insured consistent and certain punishment for those police officers who violated the rights of citizens or Departmental directives was a custom so deeply ingrained as to constitute the actual policy of the Defendant City of Philadelphia.

222.    The foregoing acts, omissions, systemic deficiencies, custom and deliberate indifference, caused police officers, including Defendants Nolan, Tilley, Melvin, Soares, John Doe I, John Doe II, John Doe III and John Doe IV, to believe that misconduct, including the violation of citizens rights would not be promptly punished and that any punishment or discipline imposed would be delayed for years and ultimately overturned, with the foreseeable result that officers, including Defendants Nolan, Tilley, Melvin, Soares, John Doe I, John Doe II, John Doe III and John Doe IV believed that they could violate the rights of citizens like Plaintiff's Decedent and Plaintiff Martinez.

223.    The foregoing acts, omissions, systemic deficiencies, custom and deliberate indifference, caused police officers, including Defendants Nolan, Tilley, Melvin, Soares, John Doe I, John Doe II, John Doe III and John Doe IV, to believe that misconduct, including the violations of citizens' rights, would not be meaningfully investigated or that no meaningful sanctions, punishment or discipline would be imposed, with the foreseeable result that officers, including Defendants Nolan, Tilley, Melvin, Soares, John Doe I, John Doe II, John Doe III and John Doe IV, believed that they could violate the rights of citizens like Plaintiff's Decedent and Plaintiff Martinez with impunity.

224.    Defendant City of Philadelphia was deliberately indifferent to the need for training, supervision and discipline of police officers to avoid creating situations in which said

-38-

officers believed that they had to use deadly force or unnecessarily use deadly force, with the foreseeable result that deadly force was used unreasonably, as in the shooting of Plaintiff's Decedent.

225.   Defendant City of Philadelphia failed to provide adequate training in the methods for avoiding the use of deadly force.

226.   Defendant City of Philadelphia failed to investigate, discipline, retrain or terminate officers who used deadly force after they unreasonably escalated confrontation or failed to take appropriate steps to avoid having to use deadly force.

227.   Defendant City of Philadelphia failed to provide adequate practical training in the use of deadly force, including, but not limited to, live action simulations and other generally accepted public tools and methods for training officers to avoid the unnecessary use of deadly force.

228.   Defendant City of Philadelphia failed to meaningful investigate and discipline officers involved in cases of so called accidental shootings.

229.   The unreasonable escalating of or creating situations where officers used deadly force and the unreasonable use of deadly force were customs so deeply ingrained as to constitute the actual policy of Defendant City of Philadelphia.

230.   The foregoing acts, omissions, systemic deficiencies, customs and deliberate indifference caused police officers, including Defendants Nolan and Tilley to believe that they could engage in conduct which unreasonably escalated the situation and thereafter used deadly force or the use of unnecessary deadly force and that their conduct would not be meaningfully investigated and that no sanctions or retraining would be imposed, with the foreseeable result

-39-

that officers, including Defendants Nolan and Tilley believed they could violate the rights of citizens, like Plaintiff's Decedent with impunity.

231.    Defendant City of Philadelphia's policies, practices and customs and its failure, with deliberate indifference to properly train, supervise, investigate and discipline in connection with the use of firearms when innocent citizens are present, caused Philadelphia police officers, including Defendants Nolan and Tilley, to violate Plaintiff's Decedent's rights under the United States Constitution.

232.    Defendant City of Philadelphia is responsible for a pattern of practice of improper shooting of innocent persons and by failing to meaningfully investigate and discipline officers who engage in such conduct including officers who are not meaningfully disciplined when they fabricate facts, fabricate their need to use deadly force and attempt to cover up or conceal their misconduct.

233.    As a direct and proximate result of or by virtue of an affirmative link or causal nexus thereof, the aforesaid acts, omissions and deliberate indifference to the danger of harm to citizens like Plaintiff's Decedent and the need for more or different training, investigation and discipline, systemic deficiencies, policies, practices and customs of Defendant City of Philadelphia, defendant officers, including Defendants Nolan, Tilley, Melvin, Soares, John Doe I, John Doe II, John Doe III and John Doe IV, violated the rights of Plaintiff's Decedent and Plaintiff Martinez under the laws and Constitution of the United States of America including the Fourth, Eighth and Fourteenth Amendments and 42 U.S.C.§ 1983 pertaining to Plaintiff's

Decedent's right to be free from unreasonable or excessive force, unreasonable seizure and to be secure in his person and property and Plaintiff Martinez' right to be free from unreasonable searches and seizures.

234.    The above-described policies and customs and failure to adopt necessary and appropriate policies demonstrated a deliberate indifference on the part of the high-ranking policymakers and decision makers of Defendant City of Philadelphia, which group includes, but is not limited to Defendants Nutter, Ramsey and the supervisory/management level employees of the Philadelphia Police Department, were the cause of the violation of the rights of Plaintiff's Decedent and Plaintiff Martinez, as alleged herein and the injuries and damages that resulted therefrom.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos and Plaintiff Roxanne Martinez respectfully requests that this Honorable Court enter judgment in their favor and against Defendant City of Philadelphia in the amount of all damages, including compensatory damages, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

## COUNT IX
## SUPPLEMENTAL STATE LAW CLAIM - ASSAULT AND BATTERY
## PLAINTIFF FERNANDO GONZALEZ, ADMINISTRATOR VS. ALL DEFENDANTS

235.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-234 as though the same were more fully set forth at length herein.

236.    Defendants Nolan and Tilley commanded their police vehicle in a manner which

struck Plaintiff's Decedent from behind while he was lawfully walking and/or running on the street.

237.    While Plaintiff's Decedent lay convulsing on the street after being struck by the police vehicle and sustaining a broken leg, Defendants Nolan and Tilley fired eleven (11) shots at Plaintiff's Decedent, striking him six (6) times and fatally wounding him.

238.    While Plaintiff's Decedent lay convulsing on the street, Defendant Soares administered OC pepper spray to Plaintiff's Decedent.

239.    Defendants Nolan, Tilley, Soares, Melvin and Kennedy had improper contact with Plaintiff's Decedent while he lay convulsing on the street.

240.    The actions and conduct of said Defendants constitute and result in an illegal assault and battery upon Plaintiff's Decedent under the laws of the Commonwealth of Pennsylvania.

241.    Said Defendants' intentionally placed Plaintiff's Decedent in reasonable apprehension of imminent harm and/or offensive bodily contact and Defendants' actions were the actual cause of Plaintiff's Decedent's harm, injuries and damages.

242.    The aforementioned Defendants unlawfully and without justification engaged in the above-described conduct and used excessive force upon Plaintiff's Decedent, causing bodily and psychological injury to the Plaintiff's Decedent.

243.    Defendants City of Philadelphia, Nutter, Ramsey and the supervisory/management level employees of the Philadelphia Police Department precipitated the unlawful conduct by defendant officers by condoning, accepting, tolerating or encouraging such illegal actions and misconduct by police officers.

-42-

244.    By allowing the defendant officers named herein to respond to the initial 911

emergency call on May 25, 2013, and by failing to properly monitor their actions, take prompt

remedial action or effect proper discipline for their conduct, Defendants City of Philadelphia,

Nutter, Ramsey and other supervisory police personnel enabled the named defendant officers to

commit the acts of assault and battery upon Plaintiff's Decedent as more fully described herein.

245.    By failing to develop and implement policies prohibiting the use of excessive

force and brutality against citizens, by failing to establish a complaint procedure and by failing to

establish training programs wherein management level/supervisory employees are trained in how

to recognize, receive and prosecute complaints of excessive force and brutality against citizens,

Defendants City of Philadelphia, Nutter and Ramsey and the supervisory/management level

employees of the Philadelphia Police Department enabled the defendant officers to commit the

acts of assault and battery upon the Plaintiff's Decedent.

246.    The aforementioned Defendants engaged in unlawful conduct which would shock

the conscience of a reasonable person.

247.    As a direct and proximate result of the Defendants' actions, Plaintiff's Decedent

suffered physical pain, serious mental anguish, psychological and emotional distress, fear,

anxiety, embarrassment, pecuniary loss and the loss and enjoyment of life's pleasures, all to his

great detriment.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban

Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos and Plaintiff Roxanne Martinez

respectfully request that this Honorable Court enter judgment in their favor and against the

Defendants in the amount of all damages, including compensatory damages, punitive damages

-43-

against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42

U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

**COUNT X**
**SUPPLEMENTAL STATE LAW CLAIM - FALSE ARREST/FALSE IMPRISONMENT**
**PLAINTIFF FERNANDO GONZALEZ, ADMINISTRATOR VS. ALL DEFENDANTS**

248.     Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-247 as though the same were more fully set forth at length herein.

249.     By striking Plaintiff's Decedent with their police vehicle at a time wherein Plaintiff's Decedent had committed no crime, Defendants Nolan and Tilley, subjected Plaintiff's Decedent to an arrest without probable cause or any valid basis.

250.     As a result of being struck by the police vehicle and sustaining a broken leg and grievous injuries, Plaintiff's Decedent was detained and imprisoned in the area wherein he was struck and knocked to the ground.

251.     Defendants Nolan, Tilley and Soares furthered their false arrest and imprisonment of Plaintiff's Decedent by discharging their firearms, striking Plaintiff's Decedent six (6) times and by administering OC pepper spray to Plaintiff's Decedent while he lay convulsing on the ground.

252.     Defendant officers subjected Plaintiff's Decedent to an arrest and false imprisonment without probable cause and privilege of arrest and for their own malicious purposes.

253.     Defendants' arrest, detention and confinement of Plaintiff's Decedent was unjustified.

254.     Defendant officers did not arrest, confine and imprison Plaintiff's Decedent for a

legitimate law enforcement purpose but rather for the purpose of defending their illegal actions against Plaintiff's Decedent and for exacting cruel, physical and mental punishment upon Plaintiff's Decedent.

255.    The conduct of the defendant officers constitutes a false arrest and false imprisonment of the Plaintiff's Decedent, which resulted in the Plaintiff's Decedent sustaining the damages and injuries set forth herein.

256.    The conduct of the defendant officers named herein in subjecting the Plaintiff's Decedent to false arrest and false imprisonment was and continues to be accepted by Defendants City of Philadelphia, Nutter, Ramsey and management level/supervisory police personnel.

257.    Defendants are liable to Plaintiff's Decedent for false arrest and false imprisonment under the laws of the Commonwealth of Pennsylvania.

258.    Defendants' conduct further violated Plaintiff's Decedent's rights, privileges and immunities as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the applicable statutes and case law therein.

259.    Plaintiff's Decedent was injured and damaged as set forth above by Defendants Nolan, Tilley, Melvin and Soares in that they acted with the intent to arrest and confine Plaintiff's Decedent unlawfully and such actions were the actual and proximate cause of Plaintiff's Decedent's confinement.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants,

interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

**COUNT XI**
**SUPPLEMENTAL STATE LAW CLAIM - NEGLIGENT INFLICTION**
**OF EMOTIONAL DISTRESS**
**PLAINTIFF FERNANDO GONZALEZ, ADMINISTRATOR VS. ALL DEFENDANTS**

260.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-259 as though the same were more fully set forth at length herein.

261.    The above-described extreme and outrageous conduct, acts or omissions of the above-named Defendants resulted in the negligent infliction of emotional distress, psychological trauma, psychic pain and suffering upon the Plaintiff's Decedent and instilled in his mind an immediate and permanent sense of fear and trepidation and said acts or omissions exceed all bounds of decency universally recognized and accepted in a civilized society.

262.    The emotional distress suffered by Plaintiff's Decedent resulted in the manifestation of physical symptoms.

263.    As a direct and proximate result of the aforesaid conduct, acts or omissions of the above-named Defendants, Plaintiff's Decedent suffered the following:

      A.    Emotional distress, mental anguish and psychological distress and trauma and the resulting physical pain and suffering;

      B.    Severe fright, worry, horror, shock to his nerves and nervous system and grief;

      C.    Embarrassment, shame, humiliation and anger; and

      D.    Past expenses for medical care and treatment.

-46-

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

### COUNT XII
### SUPPLEMENTAL STATE LAW CLAIM - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF FERNANDO GONZALEZ, ADMINISTRATOR VS. ALL DEFENDANTS

264.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-263 as though the same were more fully set forth at length herein.

265.    The aforesaid extreme and outrageous conduct, acts or omissions of the Defendants, including the defendant officers, in the scope of their employment were acting independently, were calculated, designed and intended by Defendants to intentionally inflict deliberate emotional distress, psychological trauma, pain and suffering upon Plaintiff's Decedent.

266.    Defendants engaged in said conduct with intent to instill an immediate and permanent sense of fear in Decedent Plaintiff's mind.

267.    As a direct and proximate cause of the actions and/or omissions of the Defendants, Plaintiff's Decedent suffered extreme emotional distress, fear, anxiety, embarrassment, pecuniary loss, loss of life's enjoyments and resulting physical pain, all to his great detriment.

268.    The cause of action against the above-named Defendants for the tort of intentional

-47-

infliction of emotional distress is recognized under the laws of the Commonwealth of Pennsylvania and by the Pennsylvania courts.

269.    The actions of the Defendants against the Plaintiff's Decedent, which constituted outrageous conduct, was known to the Defendants and said actions directly and proximately caused Plaintiff's Decedent to suffer emotional distress.

270.    The actions of Defendant City of Philadelphia against Plaintiff's Decedent, by and through its supervisors, upper management level employees and officers, constituted outrageous conduct which directly and proximately caused the Plaintiff's Decedent to suffer emotional distress.

271.    As a direct and proximate result of the actions of the Defendants, as more fully described above and the resulting extreme medical and emotional distress and physical illness, Plaintiff's Decedent incurred financial expenses, medical bills and economic loss, to his great detriment and for which he is entitled to recover damages.

272.    As a direct and proximate result of the outrageous conduct, actions and omissions of the Defendants and the resulting emotional and psychological stress and trauma, mental anguish, pain and suffering, fright, horror, grief, shame, humiliation, embarrassment, severe anger, disappointment, worry, medical expenses and economic loss, the Plaintiff's Decedent/Plaintiff Fernando Gonzalez is entitled to punitive damages, both factually and legally against the individual Defendants.

WHEREFORE, Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants in the amount of all

-48-

damages, including compensatory damages, punitive damages against individual Defendants,

interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief

that this Honorable Court deems just and reasonable.

## COUNT XIII
## SUPPLEMENTAL STATE LAW CLAIM - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFF ROXANNE MARTINEZ VS. ALL DEFENDANTS

273.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1- 272 as

though the same were more fully set forth at length herein.

274.    The above-described extreme and outrageous conduct, acts or omissions of the

above-named Defendants resulted in the negligent infliction of emotional distress, psychological

trauma, psychic pain and suffering upon the Plaintiff Martinez and instilled in her mind an

immediate and permanent sense of fear and trepidation and said acts or omissions exceed all

bounds of decency universally recognized and accepted in a civilized society.

275.    The emotional distress suffered by Plaintiff Martinez resulted in the

manifestation of physical symptoms.

276.    As a direct and proximate result of the aforesaid conduct, acts or omissions of

the Defendants, Plaintiff Martinez suffered the following:

      A.    Emotional distress, mental anguish and psychological distress and

           trauma and the resulting physical pain and suffering;

      B.    Severe fright, worry, horror, shock to her nerves and nervous system

           and grief;

      C.    Embarrassment, shame, humiliation and anger; and

D.      Past or future expenses for medical care and treatment.

WHEREFORE, Plaintiff Martinez respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants in the amount of all damages, including compensatory damages, punitive damages against individual Defendants, interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief that this Honorable Court deems just and reasonable.

### COUNT XIV
### SUPPLEMENTAL STATE LAW CLAIM - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF ROXANNE MARTINEZ VS. ALL DEFENDANTS

277.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-276 as though the same were more fully set forth at length herein.

278.    The aforesaid extreme and outrageous conduct, acts or omissions of the above-named Defendants, including the defendant officers, in the scope of their employment were acting independently, were calculated, designed and intended by Defendants to intentionally inflict deliberate emotional distress, psychological trauma, pain and suffering upon Plaintiff Martinez.

279.    Defendants engaged in said conduct with intent to instill an immediate and permanent sense of fear in Plaintiff Martinez' mind.

280.    As a direct and proximate cause of the actions and/or omissions of the Defendants, Plaintiff Martinez has suffered, continues to suffer and will suffer in the future from extreme emotional distress, fear, anxiety, embarrassment, pecuniary loss, loss of life's enjoyments and resulting physical pain, all to her great detriment.

281.    The cause of action against the above-named Defendants for the tort of intentional infliction of emotional distress is recognized under the laws of the Commonwealth of Pennsylvania and by the Pennsylvania courts.

282.    Defendants' actions against Plaintiff Martinez, which constituted outrageous conduct, were known to the Defendants City of Philadelphia, Nutter, Ramsey and supervisory/ management level police personnel and said actions directly and proximately caused Plaintiff Martinez to suffer emotional distress.

283.    The actions of Defendant City of Philadelphia against Plaintiff Martinez, by and through its supervisors, upper management level employees and officers, constituted outrageous conduct which directly and proximately caused Plaintiff Martinez to suffer emotional distress.

284.    As a direct and proximate result of the actions of the Defendants, as more fully described above and the resulting extreme medical and emotional distress and physical illness, Plaintiff Martinez has incurred and will continue to incur financial expenses, medical bills and economic loss, to her great detriment and for which she is entitled to recover damages.

285.    As a direct and proximate result of the actions of the Defendants, as more fully described above and her resulting extreme mental and emotional distress and physical illness, Plaintiff Martinez was rendered disabled from engaging in regular and meaningful employment.

286.    As a direct and proximate result of the outrageous conduct, actions and omissions of the Defendants and the resulting emotional and psychological stress and trauma, mental anguish, pain and suffering, fright, horror, grief, shame, humiliation, embarrassment, severe anger, disappointment, worry, medical expenses and economic loss, Plaintiff Martinez is entitled to

-51-

punitive damages, both factually and legally against the individual Defendants.

WHEREFORE, Plaintiff Roxanne Martinez respectfully requests that this

Honorable Court enter judgment in her favor and against the Defendants in the amount of all

damages, including compensatory damages, punitive damages against individual Defendants,

interest, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988 and such other relief

that this Honorable Court deems just and reasonable.

### COUNT XV
### SUPPLEMENTAL STATE LAW CLAIM - WRONGFUL DEATH
### PLAINTIFF FERNANDO GONZALEZ, ADMINISTRATOR VS. ALL DEFENDANTS

287.   Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-286 as

though the same were more fully set forth at length herein.

288.   Plaintiff Fernando Gonzalez in his capacity as Administrator of the Estate of

Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos brings this action

pursuant to the Wrongful Death provisions of the Judiciary Act of July 9, 1976, P. L. 586, 42 Pa.

C.S.A.§ 8301 et seq. and Rule 2201 of the Pennsylvania Rules of Civil Procedure.

289.   Plaintiff's Decedent did not bring an action for the injuries which resulted in his

death and no action for wrongful death of the Plaintiff's Decedent has been commenced against

the above-named Defendants on account of the grievances and claims set forth herein.

290.   Plaintiff's Decedent lost his life, as more fully described above and said death was

as a direct and proximate result of the negligent, careless, reckless, wanton, willful conduct, acts

or omissions of the Defendants, as more fully described above.

291.   Plaintiff Fernando Gonzalez brings this action under and by virtue of the

Pennsylvania Wrongful Death Act to recover all damages appropriate thereunder and as maybe permitted by applicable law at the time of trial.

292.     As a direct and proximate result and consequence of the demise of the Plaintiff's Decedent, his estate has been deprived of the following:

    A. The cost and expenses of all funeral, burial and estate administration;

    B. The amount that will fairly and adequately compensate the family of the Plaintiff's Decedent for their loss of such contributions as they would have received after his death;

    C. The amount that will fairly and adequately compensate the family of the Plaintiff's Decedent for the loss of future earnings and diminished economic horizons that now must be supplied for the supervision, care and tutelage of Plaintiff's Decedent's minor child, Jayden;

    D. The value of all sums the Plaintiff's Decedent would have contributed to his family from the date of his death until the end of his life expectancy, had he lived that long; and

    E. The value of services, society and comfort the Plaintiff's Decedent would have provided to his family had he lived.

    WHEREFORE, the Plaintiff Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award all

damages and relief to which he is entitled pursuant to the Wrongful Death provisions of the

Judiciary Act of the Commonwealth of Pennsylvania, including those provided pursuant to 42 Pa.

C.S.A. § 8302.

**COUNT XVI**
**SUPPLEMENTAL STATE LAW CLAIM - SURVIVAL ACTION**
**PLAINTIFF FERNANDO GONZALEZ, ADMINISTRATOR VS. ALL DEFENDANTS**

293.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-292 as

though the same were more fully set forth at length herein.

294.    Plaintiff Fernando Gonzalez in his capacity as Administrator of the Estate of

Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos brings this action

pursuant to the Pennsylvania Survival Act 42 Pa. C.S.A.§ 8302 et seq.

295.    Plaintiff's Decedent did not bring an action and no action was brought against

Defendants during the lifetime of Plaintiff's Decedent for the injuries which resulted in his death

and no action for the death of Plaintiff's Decedent has been commenced against the above-named

Defendants.

296.    Plaintiff Fernando Gonzalez brings the within survival action on behalf of the

Estate of the Deceased.

297.    Plaintiff's Decedent lost his life in the manner more fully described above and his

death was as a direct and proximate result of the negligent, careless, reckless, wanton and willful

conduct, acts or omissions of the Defendants, as more fully set forth in detail above.

-54-

298.    Plaintiff's Decedent suffered great physical and emotional pain prior to his death and Plaintiff Fernando Gonzalez brings the within action to recover all damages legally recoverable under the Acts of Assembly.

299.    As a direct and proximate result in consequence of the demise of Plaintiff's Decedent, his estate has been deprived of the following:

  A. The loss of future earnings, specifically the total net amount that Plaintiff's Decedent would have earned between the date of his death and the present;

  B. The loss of future earnings, specifically the net amount that Plaintiff's Decedent would have earned between the date of his death and the end of his life expectancy; and

  C. The mental and physical pain suffering an inconvenience that the Plaintiff's Decedent endured from the moment of his injury at 6:40 a.m. on May 25, 2013 until his death at 9:17 a.m. on that date.

WHEREFORE, the Plaintiff Fernando Gonzalez, Administrator of the Estate of Jose Esteban Santos Paniagua, a/k/a Jose Santos, a/k/a Jose Esteban Santos respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award all damages and relief to which he is entitled pursuant to the provisions of the Judiciary Act of July 9, 1976, P. L. 586, 42 Pa. C.S.A.§ 8302 and the Pennsylvania Probate Estates and Fiduciary Code, Act of June 30, 1972, P. L. 508, 20 Pa. C.S.A. § 3373.

## DEMAND FOR JURY TRIAL

300.    Plaintiffs hereby demand a jury trial on all issues of fact and damages in this action.

Respectfully submitted,

Fredrick E. Charles, Esquire
Attorney for Plaintiffs
Attorney I.D.: 25691
441 Linden Street
Allentown, PA 18102
(610) 437-7064

-56-

**EXHIBIT "A"**

# Office of the Register of Wills of Philadelphia County, Pennsylvania

**File #: A4206-2013**

**Commonwealth of Pennsylvania**

**County of Philadelphia**

} ss.

I, **RONALD R. DONATUCCI, ESQUIRE**, Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania

DO HEREBY CERTIFY AND MAKE KNOWN That on the ____9th____ day of _October_

in the year of our Lord __2013__          **LETTERS OF ADMINISTRATION**

on the Estate of __Jose Esteban Santos Paniagua__

(AKA: Jose Santos; Jose Esteban Santos)

Deceased, were granted unto __Fernando Gonzalez__

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Date of death_____5/25/2013_____

Given under my hand and seal of office, this__9th___ day of__October_____, 20_13____

_____
*Deputy Register*

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

10-14 (Rev. 3/08)